are for these two, but we'll give you a little more than what we would give an ordinary case and have 40 minutes. So Mr. Harris, I understand you're going to open with 16 minutes. Okay. Well, why don't you then come and speak with us? May it please the Court, my name is Bruce Harris and I represent the appellant Sable Trail. When it comes to the standard of compensation in this federal condemnation case, there is no choice of law to be made and that's because the Fifth Amendment . . . Do we have jurisdiction over this? We do have jurisdiction over this, Your Honor. I have my doubts about that. Would you like to address this Sunderman jurisdiction issue first? No, I mean, we've got to resolve ourselves that we have appellate jurisdiction, right? I think we clearly have jurisdiction over the issue about the witness' testimony, but it's not clear to me that we have jurisdiction over the attorney's fees issue because the amounts of attorney's fees in both cases have not been determined, right? That is correct, Your Honor. But the rule that was decided by the Supreme Court in Budnick v. Benton Dickinson and subsequently expanded in Halleck Gravel Company, the second one is 571 U.S. 177 and the first one, Budnick, is 486 U.S. 196. Those cases hold that when there is a finding of liability for attorney's fees at the same time as the final judgment, if that issue is not appealed within the thirty days after the final judgment, it's waived. That was a situation we were in in both of these cases. We had a final appealable judgment in Sunderman and had we not addressed the standard of compensation and the attorney's fees element that went with it, it would have been waived under those decisions and both of those, or at least the Halleck Gravel Co., abrogates an Eleventh Amendment and is consistent with it. Well, it seems to me that that decision does resolve that we have jurisdiction over . . . about the landowner's testimony, right? Yes, Your Honor. But what's . . . I don't see how that case resolves the question about whether we have as part of just compensation when the amount of attorney's fees has not yet been determined. I understand the Eleventh Circuit's preference to have the issues decided on appeal at the same time, both the liability and the amount. The problem is where the liability has been decided, either in the final judgment itself, as it was in Sunderman, or in Lara, where it was merged, incorporated in by a prior . . . It seems to me the Sunderman situation is one where when you resolve one issue, it becomes clear then there can be no liability for attorney's fees. The court said, we can go ahead and resolve that because having resolved this other issue over which we clearly have jurisdiction, that necessarily means there should not have been an attorney's fee award. That's not our situation. No, Your Honor. Maybe I'm not being clear in how I'm explaining these Supreme Court cases, but those cases hold that failure to appeal a judgment that has a finding of liability for attorney's fees. If that's not done within the thirty days after the final judgment is entered, it's waived. In fact, that's precisely what happened in the Budnick case. It was a Tenth Circuit decision, and there was a final judgment that found entitlement to attorney's fees. There was some post-final judgment litigation that occurred, and ultimately the attorney's fees were liquidated, and from that order, the appellant appealed. The Tenth Circuit dismissed the appeal and said there was no jurisdiction because they hadn't appealed the original final judgment that had resolved all of the underlying case and resolved the issue of liability for attorney's fees, and in Budnick, the Supreme Court affirmed. The Eleventh Circuit took some issue with that in subsequent cases and dealt with whether or not the attorney's fees issue went to the merits of the case and whether it applied if it was based on a contractual provision, and there was some uncertainty among the circuits and uncertainty really in the Eleventh Circuit. The Hallett Gravel Company case, Supreme Court case 2014 . . . The issue in those cases were that failure to appeal it with the final judgment resulted in waiver. When it comes to the witness's testimony, the landowner's testimony, I think if you didn't appeal, you would waive the right. As I said earlier, I think there is jurisdiction over that, and I think Budnick speaks to that, but insofar as our review of the attorney's fees determination, I don't see how under our precedence we can have jurisdiction to resolve that until the amount is determined, and I don't see how any of the Supreme Court cases say otherwise. I understand your point now, Your Honor. With respect to the Sunderman, the landowner testimony, the court can exercise pendant jurisdiction and hear the attorney's fees question even though it is not a completely resolved attorney's fees liability and amount. How are those two issues inextricably intertwined, the evidentiary issue and the attorney's fees issue? The exercise of pendant jurisdiction. The attorney's fees issue goes to the standard of compensation that should be applied in the case, and that is inextricably involved in the finding in the final judgment regarding compensation. It's not necessarily directly intertwined with the evidentiary question, but it is with the merits of the final judgment because . . . Let's say the testimony was admissible and that there was no error, right? No way speaks one way or another to the issue about attorney's fees, does it? It does not, Your Honor, but . . . Which means they're not inextricably intertwined. Failure to have appealed the attorney's fees issue would have resulted in waiver of that issue, and so we had to appeal it in order to not waive it. Do I read Boudinich as establishing a bright-line rule that attorney's fees are always treated as a collateral issue, at least for purposes of determining whether there's a final judgment on the merits, and if that's true, whether it's part of the merits or not? That's ultimately . . . That's right, and that was affirmed or broadened in the Halleck . . . or Gravel Company case, that's right. I think that . . . Wasn't that cut against your argument? Well, the argument is that if we didn't appeal it, it would be waived. If we say that's not right, then GoGap can determine the amount and we can have an appeal, right? We can, Your Honor, but we had to not put our client in a position where . . . You thought that, but if we say that's not right, then we don't have a problem, right? Because then you can appeal once the amount's determined, right? Provided that it's clear that the judgment finding attorney's fees was not . . . we didn't waive our right to appeal that after the thirty days, that's right. We've obviously timely appealed it now. If that's the court's preference, then I think we would need that clarity that we can't appeal it after the determination of the amount. Do you want to talk about the testimony issue? Sure, Your Honor. Owners are presumed qualified to testify about the before value of their property. That's opinion testimony and they're presumed to have that skill and the knowledge to testify about the before value of their property, but that presumption does not apply to the after value where that after value is based on a stigma in an eminent domain case. What the after value does is specifically quantify the severance damages and . . . No, Your Honor, they couldn't have because it was an interrogatory verdict and they specifically denoted the amount of severance damages and it was not supported by the landowner's expert witness. It was only supported by the landowner's testimony. Yeah, but the final amount was less than the defendant's expert witness. That's true, but the amount of the severance damages that led to that final amount in the interrogatory verdict was only supported by the landowner's testimony. So you're asking for a remand and a retrial on that issue? Yes, Your Honor. An opinion quantifying severance damages requires a predicate and Mrs. Sunderman admitted she didn't have the predicate. Such an opinion is not something that can come in under Rule 701 because it's not something that's within the reasoning familiar in everyday life. Since it can't come in under 701, it has to come in under 702 and Mrs. Sunderman didn't establish that she had the requisite predicate. Just like the owner in Williams v. Mosaic . . . She had worked with potential buyers and knew they were looking for a place to build a home. Right? She thought that the buyers would find land encumbered by a pipeline unsuitable for that purpose, right? Unlike Williams, she did not say that her home had no present value. This was a situation where she said, look, I thought it could sell for $140,000. It just lacked value for residential purposes. It could be sold for other uses. She had experience with selling the land. She acted basically as a de facto real estate agent for her land, right? No, she did not, Your Honor. She had experience selling the land and that may go to her ability to testify about the core value, but she didn't have any experience dealing with property that had been encumbered by a natural gas pipeline. The things that you just referred to would go to a general statement, which would have been admissible, that she thinks the value of her property is less. She could make that general statement and that would have been acceptable, but when she went to quantify it, she had to have a specific predicate that she lacked. The quantification and the after value are the problem and because there was no predicate, it was error to allow that and since it was the landowner's burden of proof on severance damages and her testimony was the only thing that established enough evidence or an amount for the award of severance damages, that error was fundamental to the verdict and for that reason the case should be remanded. I thought the old Fifth Circuit precedents that still bind us make clear that a landowner can testify as to the before and after value without further qualification. Williams v. Omozaic doesn't say that, Your Honor, and that's a more recent decision. Williams, though, is to me distinguishable because Williams is the situation that I mentioned earlier where the landowner says that it has no present value at all and we said that that was pure speculation. That's pretty different from what occurred here, what the landowner testified to here, right? I respectfully disagree, Your Honor. The landowner testified here that as a result of the pipeline, two-thirds of her property, 20 of the 30 developable acres, was not suitable for residential development. That's exactly what Ms. Williams said. It's not suitable for a house. She said it had no present value, period, in Williams. That's not what this landowner testified. This landowner said just for residential purposes, it wasn't going to be suitable, admitted that it could be, that it could have value for other purposes, right? That's different. For simply agricultural. That's right. That's right. But where it's the same as the owner in Williams is that she said it had no value for residential purposes just as Mrs. Williams said her property was worth her house. Williams said the testimony there was that it was pure, quote, pure valueless, that it had no present value. That's not the same. There is a distinction because there is a value that's remaining based on Mrs. Sunderman's testimony, but where they are similar, and I would say the same, is that it was no value for residential purposes, and that equates to my home, residence, is worth nothing. Without any predicate, without ever trying to buy or sell the property, which she admitted, she never tried to buy or sell property that had a natural gas pipeline associated with it. But she gave reasons why she thought it would be unacceptable for residential use. She did. About the nature of the people who are looking to buy land like that and the reason they're buying it. She did have a basis for that. She had a basis that would lead to a conclusion that she thought the value was less. What she didn't have a basis for was that the value was zero for residential purposes. That's a distinction. Okay. Thank you. So, we'll hear from Mr. Hearn. Thank you, Your Honor, and may it please the Court, I'm Thor Hearn and I represent the Sunderman family and the Lora family. Do you see where we're coming from on jurisdiction? What's that? Do you see where we're coming from on jurisdiction? Yes, I have a pretty clear indication where you're going on that, Your Honor. Our view, we actually would see this decision as a final judgment on the question of the payment, the obligation to include attorney's fees as part of the full compensation that is owed under Florida law. But, the question of the specific dollar amount would be something that would be resolved on remand with a hearing. I don't know that that prevents the court from addressing the liability of including the attorney's fees as part of compensation. I would suggest respectfully that the court could take that up, could affirm the lower styles as a final judgment and has a very specific procedure to determine the amount of the attorney's fees as provided under Florida's law and that the court could remand it to him with instructions just to determine . . . We've held before though, haven't we, that if you determine, if the district court determines liability for attorney's fees without determining the amount, that's a non-final order? Again, he styled it as a final judgment and retained that jurisdiction. I don't know that the issue, the legal issue, has changed with the fact that if he awards $100,000 or $50,000 or whatever the amount would be, that that would change the merits that this court's asked to pass upon. Again, I do understand where you seem to be inclined to go on that issue, Your Honor. I will address the ability of Jan Sunderman to testify. You brought up some very good points, Your Honor, about her background and qualifications. This is nothing like Rhonda Williams in the Williams-Mosaic case because Jan Sunderman did have a foundation of knowledge about her property, familiarity with her property, familiarity with property owners or property purchasers, what they wanted, what she could sell the property for, how she could subdivide it. That background, certainly as an owner, qualifies her to testify. It's certainly not reversible error to justify remanding and having a new trial just because she testified. As you noted as well, the testimony that she provided, and I have the numbers in front of me, she said about $360,000 total compensation for the diminution in value for her property. The jury awarded $309,500. Her expert testified to a total of $315,000. It really is harmless error in terms of her testimony. The real outlier was what Sable Trails' appraiser said, which was it was $56,000. This distinction, which you noted is about $9,000, between what the jury awarded and some of the testimony, certainly doesn't justify remanding, reversing, and overturning this jury verdict. The jury had an opportunity, and Sable Trail had an opportunity, to cross-examine her when she was on the stand. That's where they should bring up those issues, not trying to exclude her from testifying entirely. They had the opportunity to cross-examine her if they wanted to ask what her foundation was or additional questions, they certainly could do that. The jury did not simply rubber-stamp what she testified to, but the jury considered all the information and all the testimony about the property value. It's certainly not a basis to overturn, and as I noted, the Williams case simply is not applicable here because, as you noted, Judge Pryor, where she said the property had no foundation, it also says in that opinion that Rhonda Williams never talked to an appraiser, never talked to a real estate agent, never sold the property. That is certainly not the foundation that Jan Sunderman brought to her testimony. I can discuss that point further if the court wishes, or I can address the point about the choice of law issue as well. I know it seems that you're not going to want to get into that, so I leave that to you to direct if I should address it. I think we have your case, Mr. Hearn. We'll hear from Mr. Harris. He's got a few minutes left for rebuttal. Thank you. Thank you, Your Honor, and may it please the court. If owners are permitted to provide after values, quantifying severance damages, opinions of owner wants for compensation, not based on fair market value, and that's what happened here. Just because the owner testifies to it doesn't mean that the fact finder has to credit the testimony. It only means that the testimony is admissible and can be considered for whatever way the court accords it. It doesn't mean that the district court will accept it as correct. Well, but the district court doesn't . . . it's whether or not the jury accepts it. I understand. I mean, whoever the fact finder is. Where the condemnor is a private entity who's taking private property, and the That's the effect of allowing this quantification, and it's the reason that other courts have excluded after testimony, especially in the context of stigma damages, just as was done in Williams v. Mosaic and in cases that we've cited in our brief. The rule, if there's a rule, is that owners are permitted to testify about the before value of property, but they are not qualified to testify about the after value, and that that is best left to experts who have the training, have the skill to do paired sales, and that's exactly what happened in this case. Both of the experts used that type of analysis to come up with their opinions of value, and it should be left at that. Your Honor, you've made it clear that you don't want to hear the issue on the standard of compensation. Well, it wasn't addressed in opening, and it wasn't addressed in the rebuttal, so you can't reply about something that hasn't been discussed. Thank you, Your Honor. If the court has no further questions? Nope. Thank you. We're in recess until tomorrow morning. Thank you.